BOARD OF EDUCATION OF THE CITY OF GRAND
RAPIDS *v.* NORTHVIEW PUBLIC SCHOOLS.

1. SCHOOLS AND SCHOOL DISTRICTS—ANNEXATION—EQUITABLE DIVI-
SION OF TAXES.

    Second-class school districts which annex territory from other
school districts *held,* entitled to an equitable division of taxes
(CL 1948, § 211.36, as amended by PA 1960, No 57; CLS 1956,
§§ 340.143–340.147, 340.353, 340.465, 340.981).

2. COSTS—PUBLIC QUESTION—ANNEXATION—DIVISION OF TAXES.

    No costs are allowed on appeal in proceeding for declaration of
rights by second-class school district as to division of taxes
upon annexation of territory pursuant to provisions of home-
rule city act, a public question being involved (CL 1948, § 117.1
*et seq.,* as amended; § 211.36, as amended by PA 1960, No 57;
CLS 1956, §§ 340.143–340.147, 340.353, 340.465, 340.981).

Appeal from the Superior Court of Grand Rapids;
Vander Ploeg (Claude), J. Submitted June 6, 1963.
(Calendar No. 27, Docket No. 49,927.) Decided
October 10, 1963. Rehearing denied November 7,
1963.

Bill by the Board of Education of the City of
Grand Rapids, a second-class school district, against
Northview Public Schools, a third-class school dis-
trict, for declaratory decree and accounting to deter-
mine right to share of operating tax revenue follow-
ing annexation of certain area to city. Decree for
plaintiff. Defendant appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 47 Am Jur, Schools § 20 *et seq.*
[2] 14 Am Jur, Costs § 91.

*Roger D. Anderson,* for plaintiff.

*Strawhecker & McCargar* (*Paul O. Strawhecker,* of counsel), for defendant.

KELLY, J. Appellant, Northview Public Schools, presents the following questions to this Court:

"1. Is there any express legislation authorizing any division between 2 school districts of operating taxes levied and uncollected by a school district on the detachment of a portion of the territory of that school district and the attachment thereof to a school district of the second class, under the provisions of section 143 of the school code of 1955?*

"2. In the absence of express legislation authorizing such division of operating taxes levied and uncollected, does the court have power, in equity or law, to make any division thereof between the 2 school districts?"

Part of the territory of defendant's district, known as North Park area, was annexed to plaintiff's school district by an election held August 2, 1960, under the home-rule act (PA 1909, No 279 as amended [CL 1948 and CLS 1956, § 117.1 *et seq.,* as amended (Stat Ann 1949 Rev and Stat Ann 1961 Cum Supp § 5.2071 *et seq.*)]) and became a part of plaintiff's district on September 17, 1960.

Section 564 of the school code of 1955, as last amended by PA 1960, No 123 (CL 1948, § 340.564, as amended [Stat Ann 1961 Cum Supp § 15.3564]), required such certification of school tax levies to be made "on or before September 1 of each year."

PA 1960, No 57, amended section 36 of the general property tax act by adding the following sentence: "The board of supervisors shall not levy in the year voted any tax levy voted on or after September 15."

---

* CLS 1956, § 340.143 (Stat Ann 1959 Rev § 15.3143), quoted *post,* —REPORTER.

(CL 1948, § 211.36, as amended [Stat Ann 1961 Cum Supp § 7.54]).

August 10, 1960, defendant's board of education adopted a resolution levying taxes for the school fiscal year commencing July 1, 1960, against all the taxable property in the Northview district, including the taxable property within the boundaries of the North Park area, and the sum levied for general fund or operating purposes was $238,259.45.

The Kent county board of supervisors at its 1960 annual October session directed that such operating taxes levied by the Northview district in the amount of $238,259.45 be spread upon the assessment rolls of the proper townships, under the provisions of section 37 of the general property tax act (CL 1948, § 211.37 [Stat Ann 1960 Rev § 7.55]). The collection of such taxes commenced the following December 1st and were turned over to the Northview district as collected.

The fiscal or school year of all school districts commences on the 1st day of July of each year (CLS 1956, § 340.353 [Stat Ann 1959 Rev § 15.3353]).

Plaintiff attended a meeting of defendant school board and requested a division of the uncollected operating tax moneys defendant had levied against the North Park area for the fiscal year 1960–1961, claiming that the amount of $81,011 would be a proper division considering the relative financial responsibility of the school districts in the North Park area for the 1960–1961 school year.

Defendant's answer to plaintiff's request in this regard is set forth in its brief, as follows:

"It was admitted then and has been admitted by the Northview district throughout this litigation that for the 1960–1961 fiscal year the Northview district had the financial obligation of educating membership children numbering 647 in grades kindergarten through 8 in the 2 school buildings in the North Park

area from July 1, 1960, to September 16, 1960, inclusive, and that during that time school was in session only 7 days, that is, from the day school opened for the fall session September 8, 1960, to September 16, 1960, inclusive. It was also admitted then and has been admitted by the Northview district throughout this litigation that the city district had the financial obligation of operating and maintaining the 2 school buildings in the North Park area and the education of the 647 children for the balance of that fiscal year, namely, from September 17, 1960, to June 30, 1961, inclusive.

"It is admitted that at that meeting between the 2 boards, defendant and appellant, the Northview district, refused to discuss with the city district any division of the 1960 operating taxes levied by it and uncollected and denied that the city district was entitled to any part thereof on the grounds that:

"1. It cannot pay out public funds or moneys belonging to it for purposes not specified by law;

"2. There is no express legislation contained in the general property tax act, the home-rule act or the school code of 1955 authorizing such division of or accounting for operating taxes levied and uncollected between the city and Northview districts and in the absence of such express legislation it is without legal power to make such division or accounting of its public funds or moneys; and

"3. There is no common law in force in this State authorizing such division or accounting and in the absence of express legislation on this subject it is the rule of law in Michigan that said taxes so levied, as and when collected, remain the property of the Northview district unaffected by said annexation."

September 9, 1960, plaintiff filed a "bill of complaint for declaratory relief and an accounting" against defendant. September 13, 1960, defendant moved to dismiss the bill of complaint "on the ground that on its face it is insufficient in substance and does not state a cause for equitable relief or

relief under the declaratory judgment act." Plaintiff filed minor amendments to its bill of complaint and defendant answered praying that the bill, as amended, be dismissed.

The lower court denied defendant's motion to dismiss. The case proceeded to trial and the $81,011 in dispute was divided by the court by giving to the plaintiff $32,188 and awarding to the defendant $48,823.

The provisions of sections 143, 144, 145, and 146 of chapter 5, part 1, of the school code of 1955, govern the annexation of territory to a school district of the second class. Sections 144 and 145 refer to bonded indebtedness existing at the time of annexation and are not at issue in this appeal and, therefore, not set forth in this opinion. Section 143 reads as follows:

"Whenever territory shall be annexed to a city comprising a school district of the second class, such territory, by such annexation, shall become and be part of the school district of that city." CLS 1956, § 340.143 (Stat Ann 1959 Rev § 15.3143).

Section 146 provides:

"Whenever school property belonging to another district is taken by annexation by a school district of the second class, a determination shall be made of the equitable amount that shall be paid by the second class school district. Such determination shall be made by the boards of education of the 2 districts affected. In the event the board of education of the second class school district and the board of education of the district from which the property is taken are unable to agree, the matter shall be submitted to a board of arbitration consisting of 1 member appointed by each board of education and a third member to be selected by the 2 members appointed by the boards of education. The arbitrators shall by order fix a day for hearing, and give notice of such hearing as provided in such order; they shall make such rules

for the proceedings as they shall deem proper and shall make a final order determining the amount to be paid by the school district of the second class to the district whose property was taken by such annexation and file the same with the county clerk. Taxes shall be levied and collected in the manner therein provided and such determination shall be final." CLS 1956, § 340.146 (Stat Ann 1959 Rev § 15.3146).

Appellant contends that because the 1955 legislature provided for the division of property "but did not include in such division a division of taxes levied and uncollected," we must conclude that the legislature determined there should not be a division of the levied but uncollected taxes.

Appellee answers:

"With the 1955 revision, appellant would have the court believe that a startling change was intended by our legislature. Appellant, in effect, urges that the legislature in 1955 meant to completely wipe out any kind of equitable formula when territory is annexed to a second class school district by way of the political annexation route. Not only was any equitable division done away with, appellant urges, but second class districts were to be singled out and discriminated against as compared with other school districts, since under the transfer provision of the school code county boards of education are given complete freedom in adjusting equities and requiring an accounting along equitable lines, see section 465 of the school code, CLS 1956, § 340.465 (Stat Ann 1959 Rev § 15.3465).

"We submit that the legislature never intended such an arbitrary, unfair, and discriminatory result. The discriminatory nature of such an interpretation is further highlighted by the fact that had this annexation been accomplished under the transfer pro-

visions of the school code, section 461,* rather than section 143, the county board of education would have had full freedom to make an equitable adjustment, similar to that made by the superior court judge below."

The court in a lengthy and thorough opinion traces the historical background of our school code and concludes, after a consideration of sections 147 and 465 along with section 146, "that the school code, properly construed, does provide for a division of levied and uncollected taxes as well as other assets of the divided district."

Section 147 is as follows:

"School districts in cities affected by this chapter shall be governed in all respects not herein specifically provided for by part 2 of this act, by the general school laws of the State from time to time in force." CLS 1956, § 340.147 (Stat Ann 1959 Rev § 15.3147).

Section 465 provides:

"In the resolution ordering the transfer of property, the county board or joint boards shall determine the effective date of such transfer, which shall not be less than 10 days from the date of the resolution, and shall determine whether any personal property of a school district is to be transferred and, when any real property owned by a school district is tranferred to another district, determine an equitable payment for the taking of such property. The board or joint boards may require an accounting from the affected districts and, for the purpose of making its determination, may adjourn from time to time or subject to the call of the president of the board or chairman of the joint boards." CLS 1956, § 340.465 (Stat Ann 1959 Rev § 15.3465).

---

* CLS 1956, § 340.461, as amended by PA 1957, No 135 (Stat Ann 1959 Rev § 15.3461).—REPORTER.

The legislature in enacting the school code of 1955 seemed to deem it advisable to caution against any misunderstanding as to purpose, and sets forth its legislative intent in CLS 1956, § 340.981 (Stat Ann 1959 Rev § 15.3981) as follows:

"All proceedings pending and all rights and liabilities existing, acquired or incurred at the time this act takes effect are hereby saved. It is the legislative intent that this act shall not be construed to alter or affect the continued organization or operation of the school districts of the State or the rights or liabilities of such districts, except as otherwise specifically provided herein."

We do not believe the legislature intended by its revision and enactment of the school code of 1955 to single out second class school districts and to deny to them an equitable division of taxes, as contended by appellant.

We agree with the trial court's decision. Affirmed. No costs, a public question being involved.

CARR, C. J., and DETHMERS, BLACK, KAVANAGH, SOURIS, SMITH, and O'HARA, JJ., concurred.